# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Microsoft Corporation, | Civil No. 05-1935 (JNE/SRN) |
| **Plaintiff,** | |
| v. | **REPORT AND RECOMMENDATION** |
| Ion Technologies Corporation, The World Online Communications Corporation, and Paul Martin, | |
| **Defendants and Counter-Plaintiffs,** | |
| v. | |
| Microsoft Corporation, Reginald Hinton, Randy Bradley, and Bradley, Andrew, Christopher & Kaye, | |
| **Counter-Defendants.** | |

_____

Catherine Ahlin-Halverson, Esq., Gary J. Haugen, Esq.,  Haley N. Schaffer, Esq., Michael C. Mc Carthy, Esq., John G. White, Esq., and Roy M. Bartlett, Jr., Esq, on behalf of Plaintiff and Counter-Defendants Randy Bradley and Bradley, Andrew, Christopher & Kaye

Bruce H. Little, Esq., Christopher R. Smith, Esq., and Sarah B. Stroebel, Esq., on behalf of Defendants/Counter-Plaintiffs

No appearance was entered on behalf of Counter-Defendant Reginald Hinton

_____

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-captioned case comes before the Court on Plaintiff's Motion to Strike

the Jury Demand of Defendants (Doc. No. 102), Plaintiff's Motion to Dismiss the Abuse

of Process Counterclaim (Count 1) of Defendants (Doc. No. 107), and Counter-

Defendants Randy Bradley and Bradley, Andrew, Christopher & Kaye's Motion to

Dismiss the Conversion (Count II) and Civil Conspiracy (Count III) Counterclaims (Doc.

No. 111).  These motions have been referred to the undersigned pursuant to 28 U.S.C.

§ 636 and District of Minnesota Local Rule 72.1.

## I.     BACKGROUND

Microsoft develops, advertises, markets, distributes, and licenses software.

(Amend. Compl. (Doc. No. 92) ¶ 12.)  Microsoft distributes certain certificates with its

software, called Certificates of Authenticity (COAs), to help end-users verify that they

have received genuine Microsoft software.  (Id. ¶ 11.)

In 2001, Microsoft sued Ion Technologies  Corporation (Ion) and Paul Martin for

trademark infringement and copyright infringement in connection with sales of Microsoft

products.  (Id. ¶ 14.)  On May 30, 2003, the trial court, the Honorable District Court

Judge Joan N. Ericksen determined that Ion and Martin were liable for copyright

infringement, trademark infringement, false designation of origin, engaging in deceptive

trade practices, and engaging in unfair competition.  (See id.)  Subsequently, the parties

settled the remaining issues in the case.  (Id. ¶ 15.)  Among other things, Ion agreed to

an injunction prohibiting it from distributing stand-alone Certificates of Authenticity.  (Id.)

On July 20, 2005, Ion and Martin appealed the Court's interpretation of the settlement

agreement.  See Microsoft Corp. v. Ion Techs. Corp., Civ. No. 01-1769 JNE/JGL at

Docket Entry No. 123 (D. Minn. Notice of Appeal filed Jul. 20, 2005).  On April 4, 2006,

the Eighth Circuit Court of Appeals approved the parties' stipulated dismissal of the

appeal.  Id. at Docket Entry No. 145.

Prior to the dismissal of Ion and Martin's appeal, on August 24, 2005, Microsoft

filed suit against Defendants alleging that Defendants violated the Anti-Counterfeiting Amendments Act of 2004, the relevant provision of which is codified at 18 U.S.C. § 2318(f)(2)(A), by selling stand-alone Microsoft Windows XP COAs through Ion Technologies Corporation employee Reginald Hinton.  (Compl. ¶¶ 12-26.)  Microsoft made no jury trial demand.  (Id.)  Microsoft allegedly purchased stand-alone COAs from Defendants in May and July of 2005 (according to Ion, by writing a check payable to "Reggie Hinton") through a private investigator hired by Microsoft—Randy Bradley—who is a principal in the investigation firm Bradley, Andrew, Christopher & Kaye (BACK).  (Id.; Doc. No. 45; Doc. No. 95 ¶ 31.)  On September 12, 2005, Defendants filed separate Answers.  (Doc. Nos. 22-24.)  Defendants did not include counterclaims or jury demands in their Answers.  (Id.)

On September 23, 2005, Defendants filed a Third-Party Complaint against Microsoft, Reginald Hinton, Randy Bradley, and BACK.  (Doc. No. 45.)  The Third-Party Complaint alleged that Hinton knew that Defendants had a policy against selling stand-alone COAs and that Bradley and BACK induced Hinton into selling the COAs outside the scope of Hinton's employment with Ion.  (Id.)  The Third-Party Complaint did not include a jury demand.  (Id.)  On October 12, 2005, Defendants filed a document entitled, "Jury Demand of Ion Technologies Corporation, The World Online Communications Corporation, and Paul Martin."  (Doc. No. 46.)  On October 18, 2005, Bradley and BACK moved to dismiss the Third-Party Complaint.  (Doc. No. 53.)  On October 24, 2005, Third-Party Defendant Hinton filed a pro se Answer to the Third-Party Complaint.  (Doc. No. 59.)

After Bradley and BACK's motion to dismiss was fully briefed but before the

3

hearing on the motion, the parties (with the exception of Hinton) stipulated to the

dismissal of the Third-Party Complaint without prejudice given the understanding that

Defendants would be allowed to "assert as counterclaims" its charges against Microsoft,

Hinton, Bradley, and BACK.  (Doc. No. 89.)  On January 4, 2006, the Court adopted that

stipulation and dismissed the Third-Party Complaint without prejudice.  (Doc. No. 91.)

As part of the stipulated agreement, on January 5, 2006, Microsoft filed its First

Amended Complaint which added no new factual allegations but included a claim

against Defendants for breach of an October 22, 2004 settlement agreement.  (Doc. No.

92.)  Microsoft made no jury trial demand.  (Id.)

On January 20, 2006, Defendants filed their Answer to the First Amended

Complaint; Defendants demanded a jury trial.  (Doc. No. 93.)  On the same day,

Defendants also filed a separate document, entitled, "Counterclaims," which includes

the following allegations:

> 20. Prior to May of 2005, Microsoft engaged the services of Bradley and
> BACK to contact Ion and/or the other Counter-Plaintiffs to determine if they
> were illegally selling stand-alone COAs.
> 21. Shortly after his engagement by Microsoft, Bradley discovered that stand-
> alone COAs purportedly had been advertised by Ion on
> www.pricesignal.com, a website that on information and belief was no longer
> in active operation by May of 2005.  Bradley was unsuccessful in purchasing
> stand-alone COAs online from Ion through www.pricesignal.com website.
> 22. Ion was not engaging in the sale of stand-alone COAs in May of 2005
> and all stand-alone COAs had been removed from Ion's online order website.
> 23. In July of 2005, Microsoft's counsel, Roy Bartlett, located a listing for
> stand-alone COAs purportedly offered by Ion on another website,
> www.smarterdeals.com.  On information and belief, no sales of stand-alone
> COAs were made to Mr. Bartlett or anyone acting on his behalf by Ion or any
> of the other Counter-Plaintiffs from the www.smarterdeals.com website.
> 24. Unable to purchase stand-alone COAs from Ion via the Internet, Bradley
> contacted Ion by telephone and asked Hinton to sell him stand-alone COAs.
> 25. At the time he was contacted by Bradley, Hinton was an employee of Ion.
> Hinton's duties included handling company inventory and answering

customer telephone calls.  During much of 2005, Hinton worked alone at the company office in Minneapolis, Minnesota.  Hinton had been directed not to sell stand-alone COAs.

. . . .

28. Bradley was the investigator hired by Microsoft and who made the purchases from Hinton.

29. Ion's business practice when selling items from its inventory is to require that all forms of payment be made to the company directly, not to any individual employee.  Receipt by an employee directly of payment for company products is viewed as theft from the company and is grounds for dismissal and other disciplinary action.

30. It is Ion's regular business practice to ship all products sold from the company location, using the address of the company as the return address and to include an invoice generated from Ion's computerized accounting system with each shipment.

31. Bradley paid Hinton directly as an individual for delivery of the merchandise that Bradley now claims consisted of stand-alone COAs. Bradley did not pay Ion for the stand-alone COAs he claims to have received. He paid Hinton with certified checks signed by Bradley and payable directly to "Reggie Hinton" and not to Ion.

32. Hinton personally endorsed the checks upon receipt.  No payment from the alleged transaction between Bradley and Hinton was made to Ion or to either of the other Counter-Plaintiffs.

33. The first shipment of merchandise from Hinton to Bradley was sent to Bradley's address in Woodlands, Texas, from a return address that on information and belief was at that time Hinton's temporary residence in Red Wing, Minnesota.

34. The second shipment of merchandise from Hinton to Bradley was shipped to Bradley's address in Woodlands, Texas, from a UPS® Store near Ion, not the Ion office.

. . . .

37. On or about August 31, 2005, after Counter-Plaintiff Ion was served with the Complaint in this lawsuit, Hinton unexpectedly quit his employment with Ion.

(Doc. No. 95.)

Based upon the above allegations, Defendants lodge four counterclaims.[1]  (Doc.

---

[1] The Court notes that the parties disagree as to whether the claims against Hinton, Bradley, and BACK should be deemed counterclaims or cross-claims.  (Doc. No. 113 at 1.)  While "counterclaims" are leveled against them, Hinton, Bradley, and BACK are not Plaintiffs to this litigation and are essentially in this litigation as third-party defendants rather than as counter-defendants.  The parties, however, agreed to

No. 95.)  Count I alleges that Microsoft's initiation of this lawsuit was an abuse of the

legal process because Microsoft "should have known that Hinton was not acting within

the authority or knowledge of [Defendants]" and that Microsoft "brought this lawsuit

against [Defendants] with the ulterior purposes of forcing them to expend unnecessary

funds and attempting to pressure Ion and Martin to withdraw their appeal of the prior

action."  (Id. ¶¶ 42-43.)  Counts II & III allege that Hinton, Bradley, and BACK conspired

to convert and converted COAs owned and possessed by Ion and the other counter-

plaintiffs causing damages to Defendants in excess of $75,000.  (Id. ¶¶ 46-54.)  Count

IV alleges that Hinton breached a common law duty of loyalty, honesty, and faithfulness

owed to Ion.  (Id. ¶¶ 55-59.)  Defendants demand a jury trial on their counterclaims.  (Id.

at 1.)

## II.   PLAINTIFF'S MOTION TO STRIKE THE JURY DEMAND OF DEFENDANTS (Doc. No. 102)

Microsoft moves to strike the jury demand of Ion and the other

defendants/counter-plaintiffs.  (Doc. No. 102).  The right to trial by jury in a civil matter at

common law is a constitutional right.  U.S. Const. amend. VII.  But those seeking to

invoke that right must do so in a timely fashion.  Federal Rule of Civil Procedure 38(b)

provides:

> Any party may demand a trial by jury of any issue triable of right by a jury by (1) serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to the issue, and (2) filing the demand as required by Rule 5(d). Such demand may be indorsed upon a pleading of the party.

---

denominate the subject claims as counterclaims (see Doc. No. 89 at 3), and the Court
adopted that stipulation (see Doc. No. 91 at 2).

Federal Rule of Civil Procedure 39(b) provides:

Issues not demanded for trial by jury as provided in Rule 38 shall be tried by the court; but, notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by a jury of any or all issues.

"The right to a jury in a federal court . . . is a basic and fundamental feature of our system.  And when the discretion of the court is invoked under Rule 39(b), the court should grant a jury trial in the absence of strong and compelling reasons to the contrary."  First Wis. Nat'l Bank of Rice Lake v. Klapmeier, 526 F.2d 77, 80 (8th Cir. 1975).  In considering a request to use its discretionary authority under Rule 39(b), courts "ought to approach each application under Rule 39(b) with an open mind," Littlefield v. Fort Dodge Messenger, 614 F.2d 581, 585 (8th Cir. 1980), cert. denied, 445 U.S. 945 (1980).  In considering such requests to use the authority granted in Rule 39(b), other courts have considered five factors:

(1) whether the case involves issues which are best tried to a jury;
(2) whether granting the motion would result in a disruption of the Court's schedule or that of an adverse party;
(3) the degree of prejudice to the adverse party;
(4) the length of the delay in having requested a jury trial; and
(5) the reason for the movant's tardiness in requesting a jury trial.

Harrington v. Wilber, 384 F. Supp. 2d 1321, 1324 (S.D. Iowa 2005) (citing Daniel Int'l v. Fischbach & Moore, Inc., 916 F.2d 1061, 1064 (5th Cir. 1990); Parrott v. Wilson, 707 F.2d 1262, 1267 (11th Cir.1983), cert. denied, 464 U.S. 936 (1983)).

Microsoft argues that the last pleadings directed to the issues raised in its original complaint here were Defendants' Answers to Microsoft's original complaint which were served on September 12, 2005.  (Doc. No. 104 at 4.)  Therefore, according to Microsoft, Defendants waived their right to demand a jury trial to the issues in the original

complaint or the First Amended Complaint because they did not serve their jury demand until October 12, 2005, more than ten days after they served and filed their answers to Microsoft's original complaint. (Doc. No. 104 at 4.) Microsoft does not appear to contest the timeliness of Defendants' jury demand for the issues raised in their four counterclaims.

Defendants counter that the last pleading directed to the issues in Microsoft's original complaint and First Amended Complaint would have been the last answer served by a Third-Party Defendant to the Third-Party Complaint, had the parties not stipulated to the Third-Party Complaint's dismissal. (Doc. No. 138 at 5.) Defendants also request an order granting a jury trial pursuant to the Court's discretionary authority pursuant to Rule 39(b) and contend that the Court should grant the request because there exist no strong or compelling reasons to deny their request. (Id. at 8.) Defendants contend that the delay in filing their jury demand was precipitated by the late disclosure of Reginald Hinton's role—an employee who subsequently admitted, according to Defendants, to acting outside the scope of his employment—in the sales of the COAs to Bradley. (Doc. No. 138 at 13.)

The Court finds that the present circumstances warrant the Court's invocation of its authority under Rule 39(b) to order this matter be set for trial by jury. First, the dispute here concerns primarily questions of fact about the sales of COAs and determinations of witness credibility—matters well suited to a determination by a jury. Second, Microsoft does not contend that setting the matter for trial by jury at this point will disrupt its or the Court's schedule and the Court cannot find any such basis for denying of the request. Third, Microsoft's arguments for striking the jury demand focus

8

primarily on technical faults by Defendants.  While the Court does not condone such errors, Microsoft does not offer any prejudice that would result to it should the court order a jury trial of the issues now before the Court.  Fourth, the Court does not anticipate the ordering of a jury trial of this matter will result in a significant delay in this matter.  Finally, the Court finds that given the unique facts of this case, Defendants' delay of at most a month in demanding a jury trial on the issues raised in Microsoft's Complaint was warranted.  Thus, the Court finds that the ordering of a jury trial pursuant to Rule 39(b) is appropriate.  Given the above, the Court need not decide whether Defendants/Counter-Plaintiff's jury demands met the requirements of Rule 38.  The Court recommends denying Microsoft's Motion to Strike the Jury Demand of Counter-Plaintiffs (Doc. No. 102).

## III.    MOTIONS TO DISMISS

### A.    Standard of Review

In considering a Rule 12(b)(6) motion, the Court assumes all facts alleged in the complaint as true.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  All reasonable inferences from the complaint must be drawn in favor of the nonmoving party.  Hafley v. Lohman, 90 F.3d 264, 266 (8th Cir. 1996), cert. denied, 519 U.S. 1149 (1997). Dismissal is appropriate only if "it appears beyond a doubt that the plaintiff can prove no set of facts which would entitle the plaintiff to relief."  Coleman v. Watt, 40 F.3d 255, 258 (8th. Cir. 1994).  Although "the complaint must contain sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claim to avoid dismissal," DuBois v. Ford Motor Credit Co., 276 F.3d 1019, 1022 (8th Cir. 2002), a court may

dismiss "only if it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations."  Hishon, 467 U.S. at 73.

B.   **Plaintiff's Motion to Dismiss the Abuse of Process Counterclaim (Count 1) of Defendants (Doc. No. 107)**

Microsoft moves to dismiss Defendants' abuse of process counterclaim for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. No. 107.)  "A complaining party must establish two essential elements to support an abuse of process claim: the existence of an ulterior purpose and the act of using the process to accomplish a result not within the scope of the proceeding in which it was issued."  Bigelow v. Galway, 281 N.W.2d 835, 837 (Minn. 1978).  In the counterclaim Microsoft seeks to dismiss, Defendants allege that Microsoft "knew or should have known that Hinton was not acting within the authority or knowledge of Counter-Plaintiffs" and that Microsoft "brought this lawsuit against Counter-Plaintiffs with the ulterior purposes of forcing them to expend unnecessary funds and attempting to pressure Ion and Martin to withdraw their appeal of the prior action."  (Doc. No. 95 ¶¶ 42-43.)

Defendants contend that Microsoft knew they had prohibited the selling of stand-alone COAs and that they were unaware of the acts of Hinton and that this knowledge makes the filing of the complaint in the first instance an abuse of the court process. (Doc. No. 133 at 11).

Under Minnesota tort law, "the mere issuance of a complaint, standing alone, is an insufficient ground on which to base an abuse of process counterclaim."  Surgidev Corp. v. Eye Tech., Inc., 625 F. Supp. 800, 806 n.4 (D. Minn. 1986) (citing Behrendt v.

Rassmussen, 47 N.W.2d 779 (Minn. 1951).  First, the Court finds that while the abuse

of process counterclaim contains conclusory allegations concerning Microsoft's

knowledge, there are no factual allegations to support this claim.  Second, even

assuming Microsoft willfully disregarded information from its investigators before filing

its original complaint, the filing of the complaint is the only court process which

Defendants allege Microsoft abused, and such an allegation is insufficient to meet the

pleading standards for an abuse of process claim as set forth in Minnesota tort law.

Surgidev, 625 F. Supp. at 806 n.4.  Finally, the collateral advantages that Defendants

allege Microsoft sought from the filing of this suit—forcing them to spend money on

litigation and to withdraw their appeal—are insufficient to support its abuse of process

claim.  It is common for defendants to spend money to defend against lawsuits.

Defendants fail to allege how their defense burden is a "special harm other than that

which normally flows from any litigation."  Surgidev, 625 F. Supp. at 806.  Moreover,

Defendants claim that the filing of the present litigation is an "attempt[ ] to pressure Ion

and Martin to withdraw their appeal of the prior action."  (Doc. No. 95 ¶¶ 43.)  As noted

above, since Defendants made this claim, they have, by stipulation of the parties,

withdrawn their appeal of the prior action.  It is not clear whether this litigation had

anything to do with that stipulation, but because the claim is not supported by factual

allegations, the Court is not required to assume the truth of the conclusion that this suit

was aimed at pressuring Ion and Martin to drop their appeal of the prior action.

As a result of the above findings, the Court recommends granting Plaintiff and

Counter-Defendant Microsoft Corporation's Motion to Dismiss the Abuse of Process

Counterclaim (Count 1) of Counter-Plaintiffs (Doc. No. 107).

**C.**      **Counter-Defendants Randy Bradley and BACK's Motion to Dismiss the Conversion (Count III) and Civil Conspiracy (Count III) Counterclaims (Doc. No. 111)**

Conversion is "an act of willful interference with the personal property of another, done without lawful justification, by which any person entitled thereto is deprived of use and possession." Christensen v. Milbank Ins. Co., 658 N.W.2d 580, 585 (Minn. 2003). "The plaintiff in a conversion action bears the burden of establishing the alleged converter's actions were 'without legal justification.'" Lanners v. Royal Ag Serv., Inc., No. C0-97-234, 1997 WL 471372, *2 (Minn. Ct. App. Aug. 19, 1997) (citing Larson v. Archer-Daniels-Midland Co., 32 N.W.2d 649, 650 (Minn. 1948)). "Damages are an 'essential element' in a conversion action." Wangen v. State Bank of Blomkest, No. C7-96-916, 1996 WL 665943, *2 (Minn. Ct. App. Nov. 19, 1996) (quoting Sneve v. First Nat'l Bank & Trust Co. of Minneapolis, 261 N.W. 700, 700 (Minn. 1935)), rev. denied, Jan. 29, 1997; see also Fryberger v. Anderson, 260 N.W. 625, 626 (Minn. 1935) ("In order to recover [for conversion], plaintiff needed to prove only that he was the owner of the property taken, that it was taken by the defendant and converted, and that it had value.")  "The measure of damages in a conversion case is generally the value of the property at the time of the conversion plus interest from that time." McKinley v. Flaherty, 390 N.W.2d 30, 33 (Minn. Ct. App. 1986) (citing McLeod Nash Motors, Inc. v. Commercial Credit Trust, 246 N.W.2d 17, 20 (Minn. 1932)).

Defendants have charged that Hinton, Bradley, and BACK converted Microsoft COAs owned by Defendants when Bradley paid Hinton (and not Ion) for the COAs and Bradley received the COAs Hinton mailed to him.  (Doc. No. 130 at 9.)  Defendants also allege—in a footnote in their response in opposition to Bradley and BACK's dismissal

12

motion—that Bradley also took possession of Windows XP Professional software owned by Ion and "stolen, at Bradley's urging, by Hinton."  (Doc. No. 130 at 6 n.1.) Defendants argue that "[u]nder notice pleading rules, [the Windows XP] sale is also part of Ion's conversion claim."  (<u>Id.</u>)

Bradley and BACK move to dismiss the conversion claim (Count II) as it concerns the COAs for two reasons.  They first argue that the claim fails because, at the time of the alleged conversion, the stand-alone COAs distributed by Hinton to Bradley had no legitimate value because the sale of stand-alone COAs is illegal.  (Doc. No. 113 at 3, 7.)  In other words, they argue that contraband has no value and something devoid of value cannot be converted.  (<u>Id.</u>)  In support of this argument, Bradley and BACK cite to <u>Storage Technologies Corp. v. Cisco Systems, Inc.</u>, No. Civ. 00-2253 JNE/JGL, 2003 WL 22231544, at *4-*5 (D. Minn. Sept. 25, 2003) (Ericksen, J.), <u>aff'd</u>, 395 F.3d 921 (8th Cir. 2005).  They assert that <u>Storage</u> stands for the proposition that "[t]here is no claim for conversion if the property has no value or if a party fails to allege 'a viable damages theory.'" (Doc. No. 113 at 7 (quoting <u>Storage</u>, 2003 WL at *4.))  Second, Bradley and BACK contend they were legally justified in purchasing the COAs from Hinton because they were acting as agents of Microsoft as part of a valid investigation into the illicit trafficking of Microsoft's COAs.  (Doc. No. 113 at 8.)  Because there is no independent claim of conspiracy to convert, if the conversion claim fails, argues Bradley and BACK, the civil conspiracy claim must also fail.  As to the allegation that they converted Windows XP software, Bradley and BACK argued at the motion hearing that, at best, this is a claim for an accounting of the money owed Ion, not a claim for conversion.

Defendants argue that the COAs have value for several reasons.  First, they

argue that the Anti-Counterfeiting Act of 2004 does not prohibit the sale of COAs "in conjunction with the appropriate software" and that Ion lost the value of such "combined sales." (Doc. No. 130 at 6.)  Second, Defendants respond that Bradley and BACK paid Hinton over $2500 for the COAs, demonstrating that they have value.  (Id. at 7.)  Third, they contend that the costs of this litigation are a result of the COAs falling into the hands of Microsoft via Bradley, thus, there was inherent value in retaining the COAs—to prevent this litigation.  (Id.)  Fourth, at the motion hearing, Defendants also contended that the COAs could have value as a tax write-off, although they did not specify any dollar value or under what part of the tax code such a write-off would be found.

In response to Bradley and BACK's argument that they were legally justified in their "sting" operation, Defendants argue that Bradley and BACK had sufficient knowledge to know that Hinton was acting alone (not on behalf of Ion) and, therefore, Bradley and BACK were not legally justified in purchasing stolen property.  (Id. at 9.) They cite to their allegations that Bradley, at Hinton's request, addressed payment for the COAs to Hinton, not Ion, that the checks were endorsed by Hinton, not Ion, and that one of the COA shipments was shipped with Hinton's Red Wing, Minnesota residence as the return address and that the other COA shipment was shipped from a UPS® Store and not the Ion office.  (Doc. No. 130 at 8-9.)  Defendants contend that Bradley's COA purchases were unlawful because Bradley "knowingly made test purchases from Hinton, a dishonest employee. . . . with full knowledge that it was the employee, and not his employer, who was trafficking in stand-alone COAs."  (Id. at 9-10.)

Defendants also argue that because they take the position that their conversion claim states a claim upon which relief may be granted, their conspiracy to convert claim

14

should also survive the Rule 12(b)(6) challenge.  (Id. at 10.)

Upon scrutiny, much of the value Defendants assign to the COAs is misplaced.
First, that Microsoft, through Bradley, purchased COAs it believed, if sold alone, violated
federal law and damaged its competitive advantage in the marketplace does not mean
the certificates had value to Ion.  To ultimately succeed on its conversion claims, Ion
must prove that the COAs had value to Ion at the time of the conversion; it does not
matter if the COAs had some independent value to Microsoft.  Second, while
Defendants may be correct in asserting that they might not have been sued by Microsoft
but for the COAs leaving their possession, it is too tenuous to suggest the value of the
COAs includes the still-accruing costs of defending against Microsoft's action.  The
value of property converted is the inherent and fixed value of the property at the time of
the conversion plus interest from that time.  See McKinley v. Flaherty, 390 N.W.2d at
33.  The Court finds that, at the time of their conversion, the COAs had no fixed
"litigation" value since the present litigation was not pending.  Third, Defendants'
unsupported reference at the motion hearing to the possibility of a tax write-off value of
the COAs is not one supported by factual allegations in the counterclaim, not before the
Court, and the Court does not find such an inference to be reasonable given
Defendants' vague pleading.

Despite the above, however, the Court does find that there appear to be facts
upon which relief might be granted on Defendants' conversion claim.  Defendants argue
that they could sell the COAs "in conjunction with the appropriate software."  (Doc. No.
130 at 6.)  Bradley and BACK counter that "the mixing and matching of various software
components is the very practice which the Anti-Counterfeiting Amendments Act of 2004

15

CASE 0:05-cv-01935-JNE-SRN   Document 166   Filed 06/15/06   Page 16 of 18

seeks to curtail, and . . . matching stand-alone COAs to such software gives the false impression that the software is legitimate and/or authorized." (Doc. NO. 137 at 4.) The record, however, is not clear as to whether Ion could sell the COAs with the appropriate software. The court may dismiss the conversion claim "only if it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations," Hishon, 467 U.S. at 73. The success of Defendants' claim may very well turn on the precise nature of the COAs at issue, the software Defendants would have sold in conjunction with those COAs, and the nature of the sales themselves. The Storage Technologies case cited by Bradley and BACK in support of their motion is distinguishable because the matter was before the Court on a motion for summary judgment and the Court did not have to assume the factual allegations contained in the pleadings as true. 2003 WL 22231544, at *1.

Finally, the Court must address Microsoft's argument that Defendants have not plead facts that, even if true, would meet the "without lawful justification" element of conversion. This case is similar in some respects to the one presented in Johnson-Bigler Co. v. Erickson, No. CO-88-2140, 1989 WL 23530 (Minn. Ct. App. Mar. 21, 1989). In Johnson-Bigler, an officer of a corporation transferred a vehicle from the corporation to himself without the knowledge of the other officer and later sold the vehicle to a third party. Id. at *1. When the transfer and sale were discovered, the corporation sued the third party for conversion of the vehicle. Id. The question before the Court was whether the transfer of the vehicle from the corporation to the officer was "without lawful justification." Id. After a trial of the matter, the trial court entered judgment for the third-party because the court determined that there was no evidence to

16

support the claim that Bigler converted the vehicle because there was no "evidence that the officer was without authority to transfer corporate property." Id. at *2.  Likewise, the ultimate success of Defendants' conversion claim turns on whether Hinton was acting outside the scope of his authority when he sold the COAs to Bradley.  Unlike the Johnson-Bigler case, however, here Defendants allege that the third-party, Bradley, knew Hinton was acting outside the scope of his employment when the transfer of their property occurred and that he conspired with Hinton to deprive Defendants of the COAs with this knowledge.  (See Doc. No. 95 ¶¶ 31-36, 46-54.)  If Defendants were able to prove these factual assertions, Bradley may have acted without lawful justification when he purchased the COAs from Hinton.

Based upon the above, the Court finds that the facts alleged in the Counterclaims of Defendants (Doc. No. 95) and the reasonable inferences drawn therefrom are sufficient for the conversion claims to survive Bradley and BACK's motion to dismiss. Therefore, the Court recommends denying Bradley and BACK's Motion to Dismiss (Doc. No. 111).

Based upon the foregoing, and all the files, records and

proceedings herein,

**IT IS HEREBY RECOMMENDED that:**

1.      Plaintiff's Motion to Strike the Jury Demand of Defendants (Doc. No. 102)

        be **DENIED**;

2.      Plaintiff's Motion to Dismiss the Abuse of Process Counterclaim (Count 1)

        of Defendants (Doc. No. 107) be **GRANTED**; and

3.      Counter-Defendants Randy Bradley and Bradley, Andrew, Christopher &

        Kaye's Motion to Dismiss the Conversion (Count II) and Civil Conspiracy

        (Count III) Counterclaims (Doc. No. 111) be **DENIED**.


Dated: June 15, 2006

                              s/ Susan Richard Nelson
                              SUSAN RICHARD NELSON
                              United States Magistrate Judge


Under D. Minn. L.R. 72.2(b) any party may object to this Report and
Recommendation by filing with the Clerk of Court, and serving all parties by June
30, 2006, a writing which specifically identifies those portions of this Report to
which objections are made and the basis of those objections.  Any party wishing
to oppose such objections must file and serve all parties with its response.  Failure
to comply with this procedure may operate as a forfeiture of the objecting party's
right to seek review in the Court of Appeals.