UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Microsoft Corporation,

       Plaintiff,

v.

Ion Technologies Corporation, The World Online
Communications Corporation, and Paul Martin,         Civ. No. 05-1935 (JNE/SRN)
         ORDER
       Defendants and Counter-Plaintiffs,

v.

Microsoft Corporation, Reginald Hinton, Randy
Bradley, and Bradley, Andrew, Christopher & Kaye,

       Counter-Defendants.

---

Roy M. Bartlett, Esq., Covington & Burling, and Catherine Ahlin-Halverson, Esq., Maslon Edelman Borman & Brand, LLP, appeared for Microsoft Corporation, Randy Bradley, and Bradley, Andrew, Christopher & Kaye.

Bruce H. Little, Esq., Lindquist & Vennum, P.L.L.P., appeared for Ion Technologies Corporation, The World Online Communications Corporation, and Paul Martin.

Reginald Hinton did not appear.

---

This is an action by Microsoft Corporation to recover damages arising from and to enjoin alleged violations of the Anti-counterfeiting Amendments Act of 2004, 18 U.S.C. § 2318 (2000 & Supp. IV 2004) (amended 2006), by Ion Technologies Corporation (Ion), The World Online Communications Corporation (World Online), and Paul Martin. Microsoft also seeks to recover damages arising from Ion's and Martin's alleged breaches of a settlement agreement entered into in October 2004. Ion, World Online, and Martin assert counterclaims against Microsoft for

1

abuse of process[1]; against Reginald Hinton, Randy Bradley, and Bradley, Andrew, Christopher & Kaye (BACK) for conversion and civil conspiracy[2]; and against Hinton for breach of common law duty of loyalty.  The case is before the Court on Bradley and BACK's motion for summary judgment and on Microsoft's motion for partial summary judgment.[3]  Bradley and BACK assert that the claims for conversion and civil conspiracy should be dismissed.  Microsoft asserts that it is entitled to summary judgment on its claims against Ion and Martin for violation of section 2318 and breach of contract.  For the reasons set forth below, the Court dismisses the claims against Hinton, Bradley, and BACK, and grants in part and denies in part Microsoft's motion.

## I.   BACKGROUND

Microsoft develops, advertises, markets, distributes, and licenses software.  Microsoft packages and distributes software with Certificates of Authenticity (COAs), which help end-users verify that they have received genuine Microsoft software.  Ion is a software distributor that is owned by World Online.  Martin is the president and chief executive officer of both Ion and World Online.  Hinton is a former employee of Ion.  Bradley is a private investigator who does business as BACK.

In 2001, Microsoft commenced an action (2001 Action) against Ion and Martin for copyright infringement, trademark infringement, false designation of origin, deceptive trade practices, and unfair competition.  In 2003, the Court concluded that Ion and Martin were liable to Microsoft on these claims.  *Microsoft Corp. v. Ion Techs. Corp.*, Civ. No. 01-1769, 2003 WL

---

[1]   On July 25, 2006, the Court dismissed the counterclaim against Microsoft.

[2]   Bradley and BACK contend that the claims against them are cross-claims.  Because neither Bradley nor BACK was a co-party of Ion, Martin, or World Online, the claims are not cross-claims.  *See* Fed. R. Civ. P. 13(g).

[3]   Also before the Court is Microsoft's motion to file a reply brief not to exceed 2,000 words.  The Court grants the motion.

21356084, at *6 (D. Minn. May 30, 2003). On October 22, 2004, Microsoft, Ion, and Martin reached a settlement. As part of the settlement, Ion and Martin agreed not to sell stand-alone COAs.[4] Ion and Martin also agreed to make payments to Microsoft. They have made no such payments.

During the two months following the settlement, Ion continued to sell stand-alone COAs. On December 23, 2004, the Anti-counterfeiting Amendments Act of 2004 took effect. Under the Act, it is unlawful to knowingly traffic in illicit COAs. 18 U.S.C. § 2318. From December 27, 2004, to January 17, 2005, Ion made at least nine shipments of stand-alone COAs. Invoices associated with these shipments are dated no later than December 22, 2004. Microsoft contends that Ion backdated at least some of the invoices. Ion disputes Microsoft's contention.

In early 2005, Microsoft learned of an advertisement by Ion for stand-alone COAs on a website, pricesignal.com. In May 2005, Microsoft retained Bradley and BACK to attempt to purchase stand-alone COAs from Ion. Bradley and BACK attempted to purchase stand-alone COAs from Ion via pricesignal.com, but they did not receive a response. Bradley and BACK then telephoned Ion in an attempt to purchase stand-alone COAs.

On May 24, 2005, Bradley telephoned Ion and spoke to Hinton. Bradley asked to purchase stand-alone COAs. Hinton responded that the sale of stand-alone COAs was illegal. Nevertheless, Hinton ultimately agreed to sell stand-alone COAs to Bradley. Hinton insisted that Bradley make payment to Hinton personally, that the sale remain confidential, and that the sale not be disclosed to Ion. After sending payment to an address supplied by Hinton, Bradley received ten stand-alone COAs. Hinton obtained the COAs from Ion's inventory, but he did not

---

[4]  In the 2001 Action, Microsoft moved to enforce the settlement. The Court, adopting a Report and Recommendation, concluded that Ion and Martin had agreed not to sell stand-alone COAs as part of the settlement. Ion and Martin appealed. They later stipulated to dismiss their appeal.

pass any proceeds of the transaction to Ion or Martin. In July 2005, Bradley purchased twelve stand-alone COAs from Hinton under similar circumstances. The next month, Microsoft commenced this action.

## II.   DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the party opposing the motion to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**A.   Microsoft's motion**

   *1.   Section 2318*

      *a.   Ion*

Microsoft first contends that it is entitled to summary judgment on the issue of whether Ion violated 18 U.S.C. § 2318 by making at least nine shipments of stand-alone COAs from December 27, 2004, to January 17, 2005. Under section 2318, it is illegal, in certain

circumstances,[5] to knowingly traffic in an "illicit label affixed to, enclosing, or accompanying, or designed to be affixed to, enclose, or accompany" a copy of a computer program. 18 U.S.C. § 2318(a)(1)(B). An illicit label is "a genuine certificate, licensing document, registration card, or similar labeling component" that is used by the copyright owner to verify that a copy of a computer program is neither counterfeit nor infringing on any copyright and that is, without the copyright owner's authorization, distributed or intended for distribution not in connection with the copy of the computer program to which the label was intended to be affixed by the copyright owner. *Id.* § 2318(b)(4). The term "traffic" means "to transport, transfer, or otherwise dispose of, to another, as consideration for anything of value or to make or obtain control of with intent to so transport, transfer or dispose of." *Id.* § 2318(b)(2). A copyright owner who is injured, or is threatened with injury, by a violation of section 2318(a) may bring a civil action. *Id.* § 2318(f).

Here, it is undisputed that Microsoft owns the copyrights in the programs associated with the COAs shipped by Ion from December 27, 2004, to January 17, 2005; that the COAs are illicit

---

[5] The circumstances are:

> (1) the offense is committed within the special maritime and territorial jurisdiction of the United States; or within the special aircraft jurisdiction of the United States (as defined in section 46501 of title 49);
> (2) the mail or a facility of interstate or foreign commerce is used or intended to be used in the commission of the offense;
> (3) the counterfeit label or illicit label is affixed to, encloses, or accompanies, or is designed to be affixed to, enclose, or accompany—
> > (A) a phonorecord of a copyrighted sound recording or copyrighted musical work;
> > (B) a copy of a copyrighted computer program;
> > (C) a copy of a copyrighted motion picture or other audiovisual work;
> > (D) a copy of a literary work;
> > (E) a copy of a pictorial, graphic, or sculptural work;
> > (F) a work of visual art; or
> > (G) copyrighted documentation or packaging; or
> (4) the counterfeited documentation or packaging is copyrighted.

18 U.S.C. § 2318(c).

labels; that Ion knew of the Anti-counterfeiting Amendments Act of 2004 on the Act's effective date; that Ion received payment for the COAs; and that Ion shipped the COAs after the Act's effective date. Ion argues that it did not violate the Act because the sales were complete before December 23, 2004, regardless of the shipping dates. The Court rejects Ion's argument. Even if Ion took the orders before the Act's effective date, the Act unambiguously prohibited Ion's shipment of the illicit labels.[6] *See id.* § 2318(b)(2); *cf.* Restatement (Second) of Contracts § 264 cmt. a (1981). Viewed in the light most favorable to Ion, the record reveals that Ion violated the Act by shipping stand-alone COAs from December 27, 2004, to January 17, 2005. The Court therefore grants Microsoft's motion insofar as it seeks summary judgment on the issue of Ion's liability for these shipments.

       b.     *Martin*

Microsoft next argues that it is entitled to summary judgment on the issue of whether Martin is liable for Ion's violations of the Act. To establish Martin's liability, Microsoft relies on the standards for vicarious liability that apply to copyright infringement. *See Pinkham v. Sara Lee Corp.*, 983 F.2d 824, 834 (8th Cir. 1992). Vicarious copyright liability has been described as an "outgrowth" of respondeat superior. *Gordon v. Nextel Commc'ns*, 345 F.3d 922, 925 (6th Cir. 2003); *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 261-62 (9th Cir. 1996). Vicarious copyright liability exists where a defendant has (1) the right and ability to supervise the infringing activity, and (2) an obvious and direct financial interest in the copyrighted materials' exploitation. *Pinkham*, 983 F.2d at 834. It does not require the defendant's knowledge of the infringing activity. *Cass County Music Co. v. C.H.L.R., Inc.*, 88 F.3d 635, 638 (8th Cir. 1996); *see Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 125 S. Ct. 2764, 2776 n.9 (2005).

---

[6] In light of this conclusion, the Court declines to consider the parties' arguments regarding whether Ion backdated invoices.

Similarly, "the state of mind of the copyright infringer is of no consequence to liability." *Cass County Music*, 88 F.3d at 637. Conversely, liability under section 2318 arises from "knowingly" trafficking in illicit labels. 18 U.S.C. § 2318(a), (f). Because section 2318 differs from copyright law, the Court will not apply the standards for vicarious copyright liability to determine Martin's liability under section 2318 in the absence of a sufficient explanation from Microsoft as to why its application is appropriate. *Cf. Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 439 n.19 (1984) ("The two areas of the law [patent and copyright], naturally, are not identical twins, and we exercise the caution which we have expressed in the past in applying doctrine formulated in one area to the other."). Accordingly, the Court denies Microsoft's motion insofar as it asserts that Martin's liability under section 2318 should be determined according to the standards for vicarious copyright liability. *Cf. Meyer v. Holley*, 537 U.S. 280, 285-86 (2003) ("[I]n the absence of special circumstances it is the corporation, not its owner or officer, who is the principal or employer, and thus subject to vicarious liability for torts committed by its employees or agents.").

As an alternative to vicarious copyright liability, the parties raise the possibility of determining Martin's liability under Minnesota's responsible corporate officer doctrine. *See In re Dougherty*, 482 N.W.2d 485, 490 (Minn. Ct. App.), *rev. denied* (Minn. June 10, 1992). "The responsible corporate officer doctrine applies to public welfare offenses which impose strict liability by plain language and intent." *Id.* at 489; *see State v. Arkell*, 672 N.W.2d 564, 569-70 (Minn. 2003). Accordingly, the Court declines to apply the doctrine to consider Martin's liability under section 2318.

   c. *Injunction, fees, and costs*

Microsoft also seeks a permanent injunction and an award of its fees and costs. *See* 18 U.S.C. § 2318(f)(2). The Court denies the requests as premature.

  2. *Breach of contract*

Microsoft asserts that it is entitled to summary judgment on its claim for breach of contract against Ion and Martin. To prevail on a claim for breach of contract, a plaintiff must demonstrate: (1) the formation of a contract; (2) performance by the plaintiff of any conditions precedent; (3) a breach of the contract by the defendant; and (4) damages. *See Briggs Transp. Co. v. Ranzenberger*, 217 N.W.2d 198, 200 (Minn. 1974); *Jensen v. Duluth Area YMCA*, 688 N.W.2d 574, 578-79 (Minn. Ct. App. 2004). According to Microsoft, Ion and Martin breached the 2001 Action's settlement agreement by continuing to sell stand-alone COAs after the settlement and by failing to make payments required by the settlement.

With regard to Microsoft's claim for breach of contract based on the failure of Ion and Martin to make payments required by the settlement, Ion and Martin do not dispute Microsoft's assertion that it is entitled to summary judgment. As to the first element, Microsoft relies on the Court's conclusion in the 2001 Action that Ion, Martin, and Microsoft reached a settlement agreement on October 22, 2004. Although Ion and Martin appealed, they stipulated to dismiss their appeal. Accordingly, the Court's conclusion that Ion, Martin, and Microsoft reached a settlement agreement on October 22, 2004, is final. Next, Microsoft asserts that it performed any conditions precedent because it agreed to dismiss the 2001 Action and to memorialize the terms of the settlement in a written agreement. Neither Ion nor Martin disputes whether Microsoft performed any conditions precedent. Third, the settlement agreement required Ion and Martin to pay $300,000 to Microsoft over almost six years. Ion and Martin's failure to make any payments

8

to Microsoft obviously damaged Microsoft. Viewed in the light most favorable to Ion and Martin, the record reveals that Ion and Martin breached the settlement agreement by failing to make payments required by the agreement.

Microsoft maintains that it is entitled to an award of damages in the amount of $300,000 plus pre-judgment interest to remedy the breach of contract by Ion and Martin. Microsoft does not address whether an award of future damages is appropriate. *See First State Bank of Floodwood v. Jubie*, 86 F.3d 755, 760-61 (8th Cir. 1996); *Sheet Metal Workers Local #76 Credit Union v. Hufnagle*, 295 N.W.2d 259, 263 (Minn. 1980). Accordingly, the Court declines at this time to award Microsoft the amount sought.

As to Microsoft's claim for breach of contract based on the continued sales of stand-alone COAs after the settlement, Microsoft established the first and second elements of its claim for the reasons set forth above. Turning to the third element, Ion and Martin agreed not to sell stand-alone COAs as part of the settlement agreement. It is undisputed that Ion continued to sell stand-alone COAs after the settlement. Microsoft, however, does not explain how Martin breached the settlement agreement. Because the sale of stand-alone COAs facilitates the distribution of counterfeit software, Ion's breach of the settlement agreement damaged Microsoft. Viewed in the light most favorable to Ion, the record reveals that Ion breached the settlement agreement by selling stand-alone COAs after settling the 2001 Action. The Court therefore grants Microsoft's motion insofar as it seeks summary judgment on the issue of Ion's liability for breach of contract based on Ion's sales of stand-alone COAs after the 2001 Action's settlement. The Court denies Microsoft's motion insofar as it relates to Martin's liability for breach of contract based on sales of COAs after the 2001 Action's settlement.

**B.     Ion, Martin, and World Online's counterclaims**

*1.     Bradley's and BACK's motion*

*a.     Conversion*

In support of their conversion claim, Ion, Martin, and World Online allege that they owned and possessed certain COAs as personal property; that Hinton, Bradley, and BACK deprived them of the use and possession of the COAs; and that the conduct of Hinton, Bradley, and BACK caused monetary damages.[7] Conversion is "an act of willful interference with personal property, 'done without lawful justification by which any person entitled thereto is deprived of use and possession.'" *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997) (quoting *Larson v. Archer-Daniels-Midland Co.*, 32 N.W.2d 649, 650 (Minn. 1948)). "The measure of damages in a conversion case is generally the value of the property at the time of the conversion plus interest from that time." *McKinley v. Flaherty*, 390 N.W.2d 30, 32 (Minn. Ct. App. 1986) (citing *McLeod Nash Motors, Inc. v. Commercial Credit Trust*, 246 N.W. 17, 20 (Minn. 1932)). A plaintiff cannot pursue a conversion claim for damages where no damages arise from the alleged conversion. *See Storage Tech. Corp. v. Cisco Sys., Inc.*, 395 F.3d 921, 929 (8th Cir. 2005) (characterizing plaintiff's failure to produce evidence substantiating damages as "fatal" to conversion claim); *Sneve v. First Nat'l Bank & Trust Co. of Minneapolis*, 261 N.W. 700, 700 (Minn. 1935) ("Damage is an essential element to every cause of action. Where there is no damage, pecuniary or otherwise, there is no cause of action. Consequently, whether plaintiff sues in conversion, negligence, or otherwise, she is not entitled to recover anything from the trustee . . . because she suffered no loss."). Bradley and BACK argue that they are entitled to

---

[7]     In their memorandum in opposition to Bradley and BACK's motion, Ion, Martin, and World Online assert that their conversion claim also rests on the alleged purchase by Bradley from Hinton of genuine Windows XP Professional System Builder software. The Court disagrees. No allegations regarding this purchase appear in support of the conversion claim.

summary judgment on the conversion claim because the COAs obtained from Hinton had no legitimate value and because they were lawfully justified in purchasing the COAs.

Ion acknowledges that the Anti-counterfeiting Amendments Act of 2004 "prohibits the sale of stand-alone COAs." *See* 18 U.S.C. § 2318. Ion nevertheless asserts that the alleged conversion of the COAs by Bradley, BACK, and Hinton damaged it by depriving it of the ability to sell the COAs in conjunction with the appropriate software.[8] Microsoft counters that Ion could not have sold the COAs with the appropriate software. In support, Microsoft relies on the deposition testimony of Kristi Bankhead, an Anti-Piracy Litigation and Product Identification Specialist in Microsoft's Anti-Piracy Department. According to Bankhead, Microsoft manufactured the COAs for distribution with software installed by manufacturers on new computers, the named account had been removed from the COAs, and a "large portion" of the COAs came from foreign countries. Ion points to no evidence in the record to dispute Bankhead's description of the COAs. Under these circumstances, Ion could not have sold the COAs with the software that Microsoft intended the COAs to accompany. *See* 18 U.S.C. § 2318. The Court therefore rejects Ion's contention that the alleged conversion of the COAs damaged it by depriving it of the ability to sell the COAs in conjunction with the appropriate software. In the absence of any evidence that the alleged conversion of the COAs damaged Ion, Martin, or World Online, the Court dismisses their claim for conversion against Hinton,[9] Bradley, and BACK.[10]

---

[8] In its memorandum in opposition to Bradley and BACK's motion, Ion raises additional arguments to demonstrate that the alleged conversion of COAs damaged it. In an Order issued after Ion had filed its opposition, the Court rejected these arguments.

[9] A district court "has the power 'to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence.'" *Lerohl v. Friends of Minn. Sinfonia*, 322 F.3d 486, 492 (8th Cir. 2003) (quoting *Celotex*, 477 U.S. at 326).

### b. Civil conspiracy

Bradley and BACK assert that they are entitled to summary judgment on Ion, Martin, and World Online's claim for civil conspiracy because the conspiracy claim depends on the conversion claim and the conversion claim fails as a matter of law. The Court agrees. *See Gaming Corp. of Am. v. Dorsey & Whitney*, 88 F.3d 536, 551 (8th Cir. 1996); *Harding v. Ohio Cas. Ins. Co. of Hamilton, Ohio*, 41 N.W.2d 818, 824-25 (Minn. 1950). Having granted summary judgment in favor of Hinton, Bradley, and BACK on the conversion claim, the Court grants summary judgment in their favor on the conspiracy claim.

### 2. Pleading counterclaims

The parties do not address the issue, but the Court notes that Ion, Martin, and World Online improperly asserted their counterclaims in this action. Ion, Martin, and World Online advanced their counterclaims in a separate document on the same day that they filed their Answer to Amended Complaint. Counterclaims, however, must appear in a pleading, and a separate document that contains counterclaims is not a permissible pleading. *See* Fed. R. Civ. P. 7(a), 12(b), 13(a)-(b); *cf. In re Cessna Distributorship Antitrust Litig.*, 532 F.2d 64, 67 & n.7 (8th Cir. 1976) ("A cross-claim must be stated in a pleading."). In any case, Ion, Martin, and World Online later filed an Amended Answer to Amended Complaint. Notwithstanding the introductory paragraph's assertion that counterclaims followed, the Amended Answer alleged no counterclaims. *Cf. In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir.) ("It is well-established that an amended complaint supercedes an original complaint and

---

Here, Hinton did not move for summary judgment, but summary judgment in his favor is warranted for the same reasons that summary judgment in favor of Bradley and BACK is appropriate.

[10] In light of this conclusion, the Court need not address the parties' arguments regarding whether Bradley and BACK were lawfully justified in purchasing the COAs.

renders the original complaint without legal effect."), *cert. denied sub nom. Stainless Sys. Inc. v. Nextel W. Corp.*, 126 S. Ct. 356 (2005). Moreover, Ion, Martin, and World Online asserted their counterclaims for conversion, civil conspiracy, and breach of common law duty of loyalty solely against persons who are not parties to the original action. They may not do so. *See, e.g.*, Fed. R. Civ. P. 13; *FDIC v. Bathgate*, 27 F.3d 850, 873-74 (3d Cir. 1994); *Federman v. Empire Fire & Marine Ins. Co.*, 597 F.2d 798, 805 n.9 (2d Cir. 1979); 6 Charles Alan Wright et al., *Federal Practice and Procedure* § 1435 (2d ed. 1990) ("[A] counterclaim or cross-claim may not be directed solely against persons who are not already parties to the original action, but must involve at least one existing party."). For these additional reasons, the Court dismisses the counterclaims against Hinton, Bradley, and BACK. *Cf. Smith v. Boyd*, 945 F.2d 1041, 1042-43 (8th Cir. 1991) (acknowledging district court's power to dismiss sua sponte a complaint for failure to state a claim).

### III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Microsoft's motion to file a reply brief not to exceed 2,000 words [Docket No. 183] is GRANTED.

2. Microsoft's motion for partial summary judgment [Docket No. 156] is GRANTED IN PART and DENIED IN PART.

3. Ion is liable to Microsoft under 18 U.S.C. § 2318 for shipments of stand-alone COAs made from December 27, 2004, to January 17, 2005.

4. Ion and Martin are liable to Microsoft for breach of contract based on their failure to make payments required by the 2001 Action's settlement.

5. Ion is liable to Microsoft for breach of contract based on Ion's sales of stand-alone COAs after the 2001 Action's settlement.

6. Bradley and BACK's motion for summary judgment [Docket No. 161] is GRANTED.

7.	Ion, Martin, and World Online's claims against Hinton, Bradley, and BACK [Docket No. 95] are DISMISSED.

Dated: January 24, 2007

s/ Joan N. Ericksen  
JOAN N. ERICKSEN  
United States District Judge
